**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250173-U

Order filed April 1, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0173 Circuit No. 25-DT-64 |
| | ) | |
| ISMAEL CORNEJO, | ) ) | Honorable Colette Safford, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Presiding Justice Hettel and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:   The circuit court erred in granting defendant's petition to rescind the statutory summary suspension of his driver's license where the officer had reasonable grounds to believe defendant was driving while under the influence of alcohol.

¶ 2   The State appeals the order of the Will County circuit court that granted the petition of defendant, Ismael Cornejo, to rescind the statutory summary suspension of his driver's license. The State argues that the court erred in finding that there were no reasonable grounds for the officer to believe that defendant was driving while under the influence of alcohol. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4        On January 25, 2025, defendant was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2024)) and disobeying a traffic control signal (*id.* § 11-306). He was served with a statutory summary suspension of his driver's license for refusing to submit to chemical testing. Defendant filed a petition to rescind the suspension, arguing that the officer did not have reasonable grounds to believe defendant was driving while under the influence. The matter proceeded to a hearing where the following evidence was presented.

¶ 5        Officer John Beck testified he was employed by the Joliet Police Department. On January 25, 2025, at approximately 2:50 a.m., Beck observed a vehicle directly in front of him stop at a red traffic light then proceed through the intersection while the light was still red. Beck initiated a traffic stop. Beck approached the vehicle and spoke with defendant, who was the driver. Beck informed defendant of the reason for the stop, and defendant appeared confused and stated he stopped at the traffic light and asked how long he needed to stop. Beck explained defendant needed to remain stopped until the light turned green as it was a traffic light and not a stop sign. Beck asked for defendant's driver's license and insurance, and defendant fumbled with his wallet. Defendant provided he was coming from downtown and had consumed a couple of alcoholic beverages. Beck asked defendant for more specific information regarding the quantity of alcoholic beverages defendant consumed. Defendant stated he did not know, then that maybe he had one or two beers, and then provided he consumed two beers two hours prior. Beck observed defendant's eyes were bloodshot and watery, his speech was thick and slurred and at times he mumbled, and a strong odor of an alcoholic beverage emanated from his breath.

¶ 6        Defendant denied having any physical impairments that would prevent him from performing field sobriety tests but stated he was not going to do anything. Beck asked defendant

2

to exit the vehicle, and defendant held onto the door as he exited. Beck asked defendant why he was refusing the field sobriety tests and defendant rambled about a friend who had consumed wine and was arrested after submitting to field sobriety tests. Defendant was concerned the same would happen to him if he performed poorly. Beck continued to smell the odor of an alcoholic beverage emanating from defendant's breath during this conversation outside the vehicle. Defendant confirmed with Beck that he was refusing to submit to field sobriety tests. Beck then asked defendant to submit to a preliminary Breathalyzer test. Defendant declined, stating that he did not trust the machine because it was inaccurate. Defendant began to explain why the machines were not accurate and gave an example about Beck and another officer consuming alcoholic beverages after work. Beck stated defendant was rambling and these statements did not make any sense.

¶ 7 Beck arrested defendant for DUI based on defendant's driving and confusion related to treating a traffic light as if it were a stop sign, admission to consuming alcoholic beverages, bloodshot and watery eyes, thick slurred and mumbled speech, breath emanating the strong odor of an alcoholic beverage, and refusal to perform standardized field sobriety tests. Beck detailed his training and experience in detecting impaired drivers, which included the completion of various courses, certification as a drug recognition expert, a license as a breath analysis operator, and that he served as a standardized field sobriety test instructor. Beck opined defendant could not safely operate a motor vehicle. Beck's body camera and dash camera footage were admitted into evidence.

¶ 8 The State moved for a directed verdict and argued Beck had probable cause to arrest defendant. The court denied the motion, finding that defendant met his initial burden of no reasonable grounds and the burden had shifted to the State. The State rested. The court granted the

petition to rescind the statutory summary suspension on the basis that defendant met his initial burden and the State failed to refute it. The State appeals.

¶ 9                                    II. ANALYSIS

¶ 10        On appeal, the State argues that the court erred in finding defendant established a *prima facie* case and ultimately granting the recission of defendant's statutory summary suspension because Beck had reasonable grounds to believe defendant was driving while under the influence. Defendant did not file an appellee's brief in this appeal. However, we will proceed with this appeal as the record is simple and the issue can be easily decided without the aid of an appellee's brief. See *People v. Kavanaugh*, 2016 IL App (3d) 150806, ¶ 24.

¶ 11        A defendant who receives notice of a summary suspension of his driver's license may request a hearing to rescind the statutory summary suspension. 625 ILCS 5/2-118.1(b) (West 2024). One of the grounds that may be argued is "[w]hether the officer had reasonable grounds to believe that the person was driving *** while under the influence." *Id.* § 2-118.1(b). The circuit court may utilize a probable cause analysis in these instances. *People v. Acevedo*, 2017 IL App (3d) 150750, ¶ 17. To determine whether probable cause existed, "the trial court must determine whether a reasonable and prudent person, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense." *People v. Fortney*, 297 Ill. App. 3d 79, 87 (1998). This standard requires the officer to have more than a mere suspicion but need not rise to a level of evidence sufficient to convict. *People v. Fonner*, 385 Ill. App. 3d 531, 540 (2008). This determination is a practical, commonsense decision that requires consideration of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

¶ 12        "A statutory summary suspension hearing is a civil action where the defendant motorist, as the petitioner, requests the judicial rescission of a suspension, and the State is placed in the position

of a civil defendant." (Internal quotation marks omitted.) *People v. Araiza*, 2020 IL App (3d) 170735, ¶ 15. Thus, the defendant has the burden of establishing a *prima facie* case for recission. *Fonner*, 385 Ill. App. 3d at 539. If a *prima facie* case is established, the burden shifts to the State to justify the suspension. *People v. Helt*, 384 Ill. App. 3d 285, 287 (2008). A reviewing court gives deference to the circuit court's factual findings and will only reverse if they are against the manifest weight of the evidence. *People v. Wear*, 229 Ill. 2d 545, 561 (2008), *abrogated in part on other grounds by Lange v. California*, 594 U.S. 295 (2021). A finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent, or its finding is unreasonable, arbitrary, or not based on the evidence. *People v. Sanchez*, 2021 IL App (3d) 170410, ¶ 25. We review *de novo* the ultimate legal ruling on the petition. *Wear*, 229 Ill. 2d at 562.

¶ 13        Here, the evidence established that at approximately 2:50 a.m. defendant (1) disobeyed a traffic light when he stopped at a red light then proceeded through the traffic light while it was still red; (2) was confused about the explanation of the traffic infraction as he seemed to understand the traffic light was a stop sign instead of a traffic light; (3) stated he was coming from downtown where he had consumed alcoholic beverages; (4) wavered regarding how many alcoholic beverages he consumed when he stated he did not know and then stated he had two beers; (5) fumbled with his wallet; (6) held onto his door as he exited his vehicle; (7) had the odor of an alcoholic beverage emanating from his breath while he was in the vehicle and again when he was outside; (8) had a thick and slurred speech and at times mumbled; and (9) rambled and made nonsensical statements when asked to perform field sobriety tests and submit to a preliminary Breathalyzer test. Defendant refused all proposed testing (field sobriety and a preliminary Breathalyzer test).

¶ 14 Taking a commonsense approach, the totality of the circumstances demonstrated that Beck had more than a mere suspicion that defendant committed a DUI. To find otherwise would be unreasonable, arbitrary, and not based on the evidence presented. Therefore, the court's determination was against the manifest weight of the evidence, and the court erred as a matter of law in granting the recission petition. For these reasons, the court also erred in finding defendant established a *prima facie* case and the burden had shifted to the State.

¶ 15 As a final matter, we note the record is devoid of the factual findings that the court made in reaching its determination that defendant established a *prima facie* case for recission and granting the petition. We nonetheless have made our determination based on the record before us and there are no reasons apparent on the record to disregard the evidence presented, which we conclude clearly demonstrated Beck had reasonable grounds to believe defendant was driving while under the influence of alcohol.

¶ 16 III. CONCLUSION

¶ 17 The judgment of the circuit court of Will County is reversed.

¶ 18 Reversed.

6